Charles A. Loreto, J.
The contentions raised by the Attorney-General by various defenses to the effect that relief by way of prohibition does not lie were raised before on his motion to dismiss the petition upon the same ground and were overruled by the court’s decision (N. Y. L. J., Feb. 8, 1960, p. 13, col. 4) and intermediate order (24 Misc 2d 472). Therefore, they need not be considered again.
The only question now before the court to determine is whether the granting by the trial court of a mistrial in the criminal action upon motion by the prosecutor would constitute double jeopardy if the petitioner (defendant in the criminal action) were to be subjected to a second trial upon the same indictment.
In New York the discharge of a jury in a criminal trial is governed by the Code of Criminal Procedure. Section 428 states when and under what circumstances the jury may be discharged after it has retired to consider their verdict and before their agreement thereon. Section 430 provides, “ In all cases where a jury are discharged * * * by reason of an accident or other cause, except * * *, the cause may be again tried at the same or another term.” (Italics supplied.) The determination of the question turns on whether the dismissal of the jury was based on “ other cause ” mentioned in section 430 of the statute. The statutory provision is merely a restatement of previously existing common law and what constitutes proper cause has been left to decisional interpretation.
During the cross-examination of the complainant as principal witness on behalf of the People’s case, the trial court agreed with the prosecution that the questioning was improper and irremediably prejudicial justifying the latter’s request that a juror be withdrawn and a mistrial declared. To that ruling the defendant’s attorney entered upon the record his objection.
In People ex rel. Stabile v. Warden (202 N. Y. 138, 151) the court stated: ‘ ‘ Where a jury is arbitrarily discharged in a criminal case without the consent of the defendant, and no circumstances exist calling for or permitting the exercise of a dis *479 cretion by the court, the defendant has by reason of the trial that thus comes to a sudden end been placed in jeopardy within the constitutional provision, and such discharge is a reason within the Constitution why the defendant should not be again brought to trial upon the same indictment.” (Cases cited.) It has also been said that the power to discharge a jury is a delicate and highly important trust and only if exercised in eases of extreme and absolute necessity, the discharge will not operate as an acquittal of the defendant (People ex rel. Stabile v. Warden, supra, p. 146).
And as stated upon a review of the authorities in Mack v. Commonwealth, 177 Va. 921): “ The general rule declared by statute or established by decided cases is that a trial court may, in the exercise of a sound discretion, discharge a jury without the consent of the accused when there exists a manifest necessity therefor or the ends of public justice so require, and that such discharge will not support a plea of former jeopardy.” (Cases cited.)
In State v. Slorah (118 Me. 203) it was declared that the conditions must be such as to create an imperious and manifest necessity to justify the discharge of the jury.
From a reading of the decisions dealing with the subject, it is clearly enunciated that the public as well as the accused have rights that must be safeguarded; that it would be a perversion of justice to permit and to require a trial to be concluded when corruption or prejudice is discovered, and that both sides are entitled to a trial by jury free from bias, prejudice and improper influence.
In Mack (supra, p. 925) the defendant jointly charged with another with robbery, was brought to trial separately after the other accused had been tried and acquitted. Upon cross-examination of the same complainant, he was asked by the defendant’s counsel: “ Q. And in spite of your testimony, he [the other party accused] was acquitted? A. Yes.” The motion on behalf of the Commonwealth for the discharge of the jury because the testimony thus elicited was highly prejudicial, was granted. The defendant was convicted upon a new trial and his plea of double jeopardy was overruled. The Virginia Court of Appeals sustained the ruling made below holding that counsel for the defendant voluntarily injected into the case this illegal and prejudicial evidence and that if such evidence had been introduced by the People a verdict of guilty would be reversed.
In Slorah (supra) the defendant, indicted for murder, pleaded not guilty with a suggestion of insanity. On consent the jury was conducted to the home where the homicide was committed *480 and the defendant, accompanied hy his attorney upon reaching the premises threw himself down, crying out, “ My God, take me away or I’ll he insane again.”' The defendant’s misconduct created a situation which deprived the State of its right to a fair trial.
It would be futile if not impossible for a court to attempt to preconceive and list all the situations due to human factors which might arise during the course of a trial which would make it a travesty on the administration of justice to permit the trial to proceed.
For the discussion at hand it will suffice to divide those conditions into two classes — those to which the parties do not contribute in creating and those to which they contribute in creating. In the first group are such cases as the disclosure that a juror is biased or corrupt, and that a witness, juror, Judge, counsel or party has become ill and therefore absent.
We are concerned and need deal only with the situation falling within the second classification of conditions and more particularly, the case where the misconduct of a party or his attorney on his behalf is charged as the basis for declaring a mistrial. We now turn to a consideration of whether “other cause” existed by reason of the interrogation by the defendant’s attorney of the complaining witness.
The Grand Jury of Bronx County returned an indictment against petitioner charging him with several counts arising out of the same incident (1) attempted robbery, first degree, (2) attempted grand larceny, second degree, (3) assault, first degree, with a loaded revolver with intent to commit a felony upon a person, (4) assault, first degree, with attempt to kill, (5) assault, second degree and (6) criminally carrying a loaded pistol in violation of section 1897 of the Penal Law. The petitioner pleaded not guilty and trial was commenced in the County, Court, Bronx County, with the selection of a jury, which was sworn and then testimony was taken on behalf of the People.
In his opening statement the prosecutor stated that the People would prove that the defendant approached the complaining witness with a gun saying, “ Give me your money, you--or I’ll kill you ” and that in a tussle the complainant wrested the gun from the defendant and shot him while in flight.
The defendant’s attorney on the other hand in his opening-statement to the jury declared that he would establish that the defendant was shot in the head “from the rear to the front * * *. Fot while there was a hold-up, but while running away from an attack by the complainant and a colored man * * * that the defense * * * will establish that this *481 was not a hold-up, but a premeditated shooting by the complainant to close the mouth of this defendant
In the selection of the jury the prosecutor informed the jurors that the complainant, who would be the principal witness on behalf of the People, had a criminal record. And on his direct examination the prosecutor brought out the complainant’s record of convictions.
It should be noted that his attorney states the defendant has never been convicted of a crime. Whereas the complaining witness in 1935 pleaded guilty under one indictment to cover three indictments charging him with extortion and coercion with threat to kill each of three persons. Also he was convicted for policy in 1935, for book-making in 1942 and for the same crime in 1944.
On his cross-examination the complainant was interrogated about possessing a gun and using a gun. He testified that he had a license to carry a gun in 1930 only and that in 1930 he did carry a gun. He denied that he carried a gun at any time since 1930. ■ Under further cross-examination he was asked whether in July, 1959 he carried a gun. This he denied. Also he denied that the gun produced upon the trial was his gun. Then he was asked whether he carried a gun in 1935 or thereafter, which he denied, admitting again that he carried a gun in 1930 when he was licensed to do so.
Then the complainant was asked: “ Q. Now, you were convicted, were you not, in 1935 of extortion by violence 1 ” Objection was made to the form of this question, “ extortion with violence ” and the objection was sustained. Then the defendant’s attorney asked the District Attorney to turn oyer to him the criminal record of the witness, with which he complied.
Whereupon, with that record in his hands, the defendant’s attorney asked: “ Q. On March 17,1930 did you carry a gun? ” Objection was sustained to the question. Next, the defendant’s attorney asked: “ Q. On March 17, 1930 in the Bronx Magistrates’ Court, were you charged with the crime of possessing a gun? ” Objection was raised to the question which the court indicated was improper. It was not answered, the District Attorney then requesting a mistrial, stated: “ And I am asking for a mistrial, because counselor has just taken the yellow sheet from me and apparently giving what appears to be authentic information, where he brings out into this court the fact that this man is charged with the crime of violence. Anybody can be charged with the crime of violence. The proper question is have you been convicted of it. I ask for a mistrial.”
*482 After a conference at the bench, pressing his motion and stating that the jury had been prejudiced beyond the power of the presiding Judge to instruct the jury to disregard it, the motion was granted, to which exception was duly taken. A juror was withdrawn and a new date for new trial fixed.
In view of the defense indicated in the opening to the jury that the defendant was the victim and not the assailant and in view of the complainant’s criminal record, the defendant’s attorney was entitled to and was allowed considerable latitude in cross-examining the complainant regarding his possession and use of a gun. The last question asked of him was improper and the ruling sustaining the objection to that question was correct. It is transparent that the defendant’s attorney with the official criminal record in his hands at the time he posed the question intended to convey the impression to the jury that the record supported his question. Assuming that the jury then believed by reason of the question asked by defendant’s attorney, while holding in his hand the criminal record sheet, that the complainant had been charged with possessing a gun in 1930, was that of such a highly prejudical nature as to require the granting of the District Attorney’s motion for a mistrial?
The complainant was not a lily-white citizen. His criminal record had been disclosed to the jury by the District Attorney. They therefore already knew how black his character was. Can it reasonably be said that the question ‘ ‘ On March 17, 1930 in the Bronx Magistrates’ Court were you charged with the possession of a gun? ” would or could further blacken his character in the minds of the jurors ? Of course, the question was improper. If it were feared that it planted in the minds of the jury as a fact the existence of such a charge in 1930 with whatever harmful significance one would attach to that, it could have been readily overcome by pointing out that the “ yellow sheet ” did not carry that charge and, moreover, that the complainant had a license to carry a gun in 1930. Can it be seriously believed that the question could have caused the complainant’s veracity to be affected one iota? This court must answer that in the negative as a matter of law. Then where is the prejudice to the People’s case? There can be no doubt that the Trial Judge and the District Attorney expressed their honest opinion that prejudice was created, deliberately and beyond repair, to the People’s case and their opinions should receive serious consideration and respect that should be given to the actions of honest and dedicated public officials striving to discharge their duties conscientiously and justly.
*483 The Trial Judge is empowered to discharge the jury and to declare a mistrial when in the exercise of his sound discretion, he concludes that misconduct of the defendant’s attorney has created serious prejudice to the People’s case. And in review of his ruling, which is considered with respect and also concern as to the consequence if overruled, the propriety of acting with caution and judicial restraint is foremost in the mind of this court. Also in determining the propriety of the exercise of the discretion by the trial court, an excellent statement of the considerations now taken into account is found in Commonwealth v. Cronin (257 Mass. 535, 537-538): “ It is manifest that we have no means of determining, as did the trial judge, the effect which the statement of counsel might reasonably have had upon the minds of the jurors. If the judge, acting impartially, as we must assume he did, believed that the statement of counsel was likely to result in an unjust verdict, we cannot say that his action was without justification. Of course, he could not exercise the power vested in him to act arbitrarily or without good cause to believe that the action he took Avas necessary to prevent great injustice either to the Commonwealth or to the defendant. The power of the court is always to be used alike for the protection of the public and for the security of the defendant in his right to an impartial trial. It cannot be said as matter of law that the judge was not justified in dismissing the jury on the ground that the ends of justice and public interest were likely to be defeated if the case were allowed to proceed to a verdict.” It must be said that no similarity exists between the facts of the Cronin case and the one at bar. In that case there was a basis for the trial court to find “ good cause to believe that the action he took was necessary to prevent great injustice to the Commonwealth ”.
We conclude, hoAvever, that the record here discloses no basis to support such “ good cause ”. What transpired in this case did not reach a point requiring the trial court to exercise its discretion to rule as it did. The decisions of the courts declare in varying words that the dismissal of the jury must be the result of “ absolute necessity ”, “ evident necessity ”, “ imperious necessity”, “manifest necessity”. (Mullins v. Commonwealth, 258 Ky. 529; State v. Ravincraft, 71 S. E. 2d 798 [S. Ct. S. C.]; State v. Slorah, supra; 23 C. J. S., Criminal Law, § 1384.) However described, such necessity did not exist here.
The defendant was shot by the complainant; the latter with criminal record, the former AA'ithout any. The defense intended to establish that the complainant was the assailant and he the victim. Possession of a gun, use of a gun, the likelihood of the *484 use of a gun by one or the other were evidently matters of the most vital importance and the fullest inquiry into this subject was the defendant’s right as well as the People’s.
Whether the complainant’s record of a conviction of “ extortion by coercion with intent to kill ” in three instances had been worsened because the defendant’s attorney at one time asked the question, not answered, to which objection was made, “ Q. Now, you were convicted, Avere you not in 1935 of extortion by violence 1 ” is difficult to perceive. The defendant had the alo solute right to cross-examine him as to the facts of those crimes committed by him, the manner and the means employed. He was not required to rest on the bald record or statement of his convictions (People v. Sorge, 301 N. Y. 198).
In view of the foregoing, the court concludes that double jeopardy has been incurred by the petitioner and it is therefore constrained to grant an order of prohibition. Submit order on notice.