## COMMONWEALTH vs. DARRYL STEWARD.

Suffolk.  September 10, 1985. — October 10, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

Constitutional Law, Double jeopardy.  Practice, Criminal, Mistrial, Judicial
    discretion, Double jeopardy.

Where the judge in a criminal case did not consider alternatives suggested
    by the prosecutor and by defense counsel before declaring a mistrial,
    over the defendant's objection, because three of the fourteen jurors
    empanelled had failed to appear on the second day of trial, the double
    jeopardy clause of the Fifth Amendment to the United States Constitution
    barred reprosecution of the defendant. [78-80]

INDICTMENT found and returned in the Superior Court De-
partment on January 7, 1983.

Following declaration of a mistrial by *Paul G. Garrity*, J.,
a motion to dismiss was denied by him and the case was tried
before him.

The Supreme Judicial Court granted a request for direct
appellate review.

*Cynthia J. Dodge* for the defendant.

*Michael J. Traft*, Assistant District Attorney, for the Com-
monwealth.

NOLAN, J.  The defendant asks us to hold that he was twice
placed in jeopardy by being tried and found guilty after the
judge had declared a mistrial because, on the second day of
the first trial, only eleven jurors had appeared. We so hold,
and we reverse the judgment of conviction.

The relevant events of the first trial are these. A jury of
fourteen persons were empanelled on Friday, February 10,
1984, for the defendant's trial on an indictment for robbery.
The assistant district attorney made his opening and the first
witness was called to testify. He was examined by the pros-

ecutor, cross-examined by counsel for the codefendant,[1] and counsel for the defendant started but had not completed cross-examination of the witness when court was recessed until Monday. When the trial resumed on Monday, February 13, 1984, only eleven jurors appeared, and the trial judge announced his intention to declare a mistrial because of a "manifest necessity." Counsel for the codefendant objected and suggested that the case be continued for a day. Counsel for the defendant joined in the objection. The assistant district attorney noted the possibility of continuing with eleven jurors if the defendants assented. The judge rejected all suggestions out of hand. There is an indication in the record that two of the jurors were afflicted with the "flu" and that the third juror had told somebody on Friday that he would not be present on Monday because of a death in the family. Counsel for the codefendant pressed the judge for consideration of "other less drastic solutions," repeating his suggestion that the trial be continued until the next day. Nevertheless, the judge declared a mistrial because he thought that he was compelled to do so. In advising the eleven jurors that they were excused, he said: "When you drop below 12, you have to declare a mistrial, which means that you have to start all over again."

Before a panel of new jurors was called to the courtroom, counsel for the codefendant made a motion to dismiss on the ground of double jeopardy and it was denied. Though the record does not indicate whether the defendant joined in this motion, it may fairly be inferred that he did so because the presentation of the motion followed immediately on the heels of the codefendant's objection to the declaration of the mistrial, in which the defendant's attorney expressly had joined. The Commonwealth makes no contention that the defendant waived his objection or did not adequately preserve his right to rely on the bar of double jeopardy on appeal. On retrial the defendant was convicted of robbery. He appealed the conviction and we granted his application for direct appellate review.[2]

---

[1] The codefendant was found not guilty on retrial.

[2] This case comes to the court in a somewhat unusual posture. Generally, a defendant seeks interlocutory relief under G. L. c. 211, § 3 (1984 ed.),

The protection against double jeopardy has a long history. The defendant relies entirely on his claim under the United States Constitution, but double jeopardy principles have long been a part of the common law of Massachusetts. *Lydon* v. *Commonwealth*, 381 Mass. 356, 366, cert. denied, 449 U.S. 1065 (1980). A statute protects one who has been acquitted from being tried for the same crime. G. L. c. 263, § 7 (1984 ed.). The Fifth Amendment to the United States Constitution expressly guarantees the protection against double jeopardy and this guarantee has been declared binding on the States through the Fourteenth Amendment. *Benton* v. *Maryland*, 395 U.S. 784, 787 (1969). As early as 1824, the United States Supreme Court declared that a trial judge's action in discharging a jury which was unable to agree on a verdict in a capital case did not constitute former jeopardy so as to bar the retrial of the defendant. *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579 (1824). The Court used the term "manifest necessity" in *Perez* for the first time in the context of double jeopardy when it held that "the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act." *Id.* at 580. Though there must be a high degree of necessity, it need not be absolute. See *Arizona* v. *Washington*, 434 U.S. 497, 506 (1978).

The double jeopardy provision protects one not merely from double punishment but from double trials. See *Breed* v. *Jones*, 421 U.S. 519, 528 (1975). This is not to say that a defendant may always successfully plead the bar of double jeopardy if he is brought to trial a second time after an aborted first trial. However, if the first trial is terminated over the objection of

after his first trial has ended in a mistrial and before his second trial commences. We have consistently recognized the bar of double jeopardy as a legitimate basis for the invocation of our supervisory powers under G. L. c. 211, § 3. See *Fadden* v. *Commonwealth*, 376 Mass. 604, 606 (1978), cert. denied, 440 U.S. 961 (1979). Though we have no way of knowing whether the trial judge here would have given counsel the opportunity to seek relief under G. L. c. 211, § 3, we simply note that the record fails to show that counsel asked the judge for such opportunity.

the defendant, there must be a showing of "manifest necessity" for the termination. The defendant's right to have his trial concluded on his first encounter is "sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one." *Arizona* v. *Washington, supra* at 505. See *Wade* v. *Hunter*, 336 U.S. 684, 689 (1949). This burden consists of demonstrating "manifest necessity." The burden has not been met here.

We shall be deferential to the trial judge's exercise of discretion in ruling that a "manifest necessity" exists for a mistrial "only if it is clear from the record that the judge has given careful consideration to the available alternatives and to the defendant's interest in having the trial concluded in a single proceeding." *Barton* v. *Commonwealth*, 385 Mass. 517, 519 (1982). The discretion of a trial judge where double jeopardy is concerned is more restricted than the discretion commonly granted to trial judges for the more routine matters that arise before, during, and after trials. *Jones* v. *Commonwealth*, 379 Mass. 607, 617 (1980).

It is impossible to create a crisp formula for determining when "manifest necessity" arises. *Commonwealth* v. *Reinstein*, 381 Mass. 555, 560-561 (1980). Cases are kaleidoscopic in their facts and "thus escape meaningful categorization." *Illinois* v. *Somerville*, 410 U.S. 458, 464 (1973). Despite the difficulties, our cases have contributed some guidelines for trial judges. Two principles emerge for guidance: (1) counsel must be given full opportunity to be heard and (2) the trial judge must give careful consideration to alternatives to a mistrial. *Barton* v. *Commonwealth, supra.* See *United States* v. *Lynch*, 598 F.2d 132, 136 (D.C. Cir. 1978), cert. denied, 440 U.S. 939 (1979).

Regrettably, the trial judge in this case first ruled that he was going to declare a mistrial and then, almost as an afterthought, unenthusiastically asked whether counsel objected. The sole indication that he considered the alternative of a

continuance was his comment that "the flu season has struck us with a vengeance." He might have directed an officer to call the homes of the missing jurors for a report of their conditions. The juror who was absent because of a death might have appeared on the following morning. A continuance of one day was warranted by these circumstances. Alternatively, he should have inquired whether the defendant was willing to sign the appropriate waiver and continue with eleven jurors. He did neither.

The judgment is reversed, the verdict is set aside, and the indictment is to be dismissed.

*So ordered.*